## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHELE L. RAFFERTY, *et al.*, | ) | CASE NO. 4:16 CV 0430 |
| | ) | |
| Plaintiffs, | ) | HON. JUDGE BENITA PEARSON |
| | ) | |
| *vs.* | ) | |
| | ) | |
| TRUMBULL COUNTY, OHIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CHARLES DRENNEN**

---

### The Facts that Constitute the Record

When deciding this summary judgment motion, this Honorable Court:

> ". . . must accept Plaintiff's evidence as true and draw all reasonable inferences in her favor viewing all facts and inferences drawn therefrom in the light most favorable to Plaintiff. [This Honorable Court] may not make credibility determinations nor weigh the evidence before it when determining whether an issue of fact remains for trial." ***Logan v Denny's, Inc.***, 259 F.3d 558, 566 (6th Cir. 2001)

The facts on which this Honorable Court must predicate its ruling are stated below.

*Plaintiff Katie Sherman*

Plaintiff Katie Sherman ("Sherman") was incarcerated at the Trumbull County Jail ("Jail") from November 18, 2013 through April 30, 2014.  At various times during Sherman's stay at the Jail defendant Charles Drennen ("Drennen") was the corrections officer assigned to her pod. Drennen engaged in sexually inappropriate conduct with Sherman several times between February 1, 2014 and the date of her release from the Jail; April 30, 2014 (Sherman deposition ("dep") dep. p 30).  On three or four occasions during that time, Drennen asked Sherman to bare her breasts for him (Sherman dep. p. 33-34).  Sherman acceded to Drennen's requests (Sherman dep. p. 34). Asked why she complied with Drennen's sexually based requests, Sherman, speaking under oath, stated that she "was intimidated by [Drennen]" (Sherman dep. p. 45) and that she "didn't know what to expect" if she did not comply with Drennen's requests (Sherman dep. p. 45).  Sherman describe the psychological pain and suffering attributable to Drennen's misconduct in her deposition (Sherman dep. p. 58-62).

Sherman attempted to bring Drennen's sexual misconduct to light.  Sherman asked a female corrections officer to speak with her about Drennen (Sherman dep. p. 29).  Sherman also asked that female corrections officer to provide her with a kite form so she could file a written complaint about Drennen.  Sherman's attempt to file such a complaint regarding Drennen came to naught.

> "Q. (by Mr. Raskin) Okay.  Did you request a kite from Corrections Officer Nobbs?
>
> A.  A kite and for her to come to talk about it and she never came back so I let it go."  (Sherman dep. p. 29)

2

*Plaintiff Michelle Rafferty*

Michele Rafferty ("Rafferty") was a Jail inmate from February 12, 2014 to August 16, 2014.  For about two months of her term at the Jail, Rafferty was housed with Sherman (Rafferty dep. p. 90).  Rafferty witnessed the multiple instances of Sherman's baring her breasts in response to requests made by Drennen (Rafferty dep. p. 91), and heard Drennen make crude sexual comments to and about Sherman (Rafferty dep. p. 91-92).  Rafferty also witnessed Sherman sexually touch herself to placate Drennen (Rafferty dep. p. 92).  Drennen's behavior severely upset Rafferty.  On one occasion, she confronted Drennen.  Rafferty told Drennen of her distaste for his actions toward Sherman, and said "we just don't want to see that happen anymore" (Rafferty dep. p. 116).  Drennen responded by threatening Rafferty.  Drennen told Rafferty that if she did not want the rest of her stay at the Jail to be "uncomfortable" she would not report his conduct to anyone (Rafferty dep. p. 117).

Rafferty admitted that she had emotional problems prior to entering the Jail.  She testified that her pre-existing conditions were exacerbated by witnessing Drennen's conduct toward Sherman (Rafferty dep. p. 70).  Drennen threatened to make Rafferty's life difficult.  Drennen also bragged to Rafferty that he had been investigated seven times and nothing had happened to him (Rafferty dep. p. 79).  Rafferty testified that "the acuteness and the frequency of my symptoms that have substantially increased since those events and during that time" (Rafferty dep. p. 70).

Rafferty explained that there was no way she could file a viable complaint about any of Drennen's activities.  First, whether Jail inmates received kite forms was within the discretion of corrections officers.  If a corrections officer did not deem an inmate concern to be worthy, that inmate would not receive the forms necessary to file a kite (Rafferty dep. p. 17).  Second, the

corrections officer who provided the kite form to the inmate had to place his or her name on the kite form (Rafferty dep. p. 18).  Given the nature of the problem raised by the inmate, corrections officers at the Jail were often loathe to be associated with the situation (Rafferty dep. p. 18).

**Plaintiff's Sherman and Rafferty have Each Presented Viable Claims of Constitutional Violations.**

To properly evaluate the legal sufficiency of Sherman's and Rafferty's federal constitutional claims, it is essential to define the scope of the Eighth Amendment protection against cruel and unusual punishment.  The Eighth Amendment prevents "the unnecessary and wanton infliction of pain." ***Whitney v. Albers***, 475 U.S. 312, 319 (1986) Determining what constitutes "unnecessary and wanton" infliction of pain turns on "the evolving standards of decency that mark the progress of a maturing society." ***Hudson v. McMillan,*** 503 U.S. 1, 8 (1992) As our society has matured, the standards applied to the relationship between men and women generally have become more refined.  Specifically, the parameters of the concepts of sexual harassment and sexual abuse have grown exponentially.  Contemporary society views sexual harassment and sexual abuse of prisoners as "unnecessary and wanton infliction of pain."

Within the prison context, there is no necessity or justification for sexual harassment or sexual abuse by prison personnel.

> ". . . [S]exual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances constitute the unnecessary and wanton infliction of pain forbidden by the Eighth Amendment." (Citations omitted) **Freitas v. Ault**, 109 F.3d 1335, 1338 (8th Cir. 1997)

4

*Boddie v. Schneider*, 105 F.3d 857 (2nd Cir. 1997) In simple, basic terms, "prisoners have a **clearly established** right to be free from sexual abuse".  (Emphasis added) **Schwenk** *v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)

> "[The Eighth Amendment] protects the basic concept of human dignity and forbids conduct that is 'so totally without penological justification that it results in gratuitous infliction of suffering'"
> ***Wood v. Beauclair***, 692 F.3d 1041, 1050 (9th Cir. 2012)

Drennen's requests that Sherman bare her breasts for him and masturbate for him, *supra. p.2,* were incredibly demeaning, and was an affront to Sherman's dignity.  Further, the sexually charged requests that Drennen made of Sherman were devoid of any legitimate penological purpose.  Drennen's conduct toward Sherman violated her Eighth Amendment rights to be free from sexual harassment or sexual abuse.  Courts that have clearly decided that sexual harassment and sexual abuse of prisoners by corrections officer is not constitutional have, not surprisingly, established the standard of proof applicable in Eighth Amendment sexual harassment cases.  One such case is ***Boxer X v. Harris***, 437 F.3d 1107 (11th Cir. 2006) That appellate court, after explicitly joining other circuit courts that have deemed sexual abuse of a prisoner by a prison official to be an actionable Eighth Amendment violation, stated:

> ". . . we conclude that there is an objective component of the inquiry, which requires that the injury be 'objectively sufficiently serious,' and a subjective component, which requires the prison official have a 'sufficiently culpable state of mind.'"  437 F.3d at 1111

People have a special sense of privacy in sexual body parts.  Involuntary exposure of such body parts in the presence of persons of the opposite sex is especially demeaning and humiliating.  *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993) That tenet, alone, attests to the seriousness of the harm to Sherman directly and proximately caused by Drennen's sexual improprieties.  The subjective element of Sherman's sexual harassment claim is obvious from the record.  Sherman's deposition testimony leaves no doubt as to why she bared her breasts and masturbated.  The motivating factor was Drennen's totally improper requests.  The record most definitely permits a reasonable juror to find that Drennen acted toward Sherman with a "culpable state of mind."

Drennen created a sexually charged, sexually hostile environment for the female prisoners within his sphere of control.  Drennen's conduct toward Sherman directly and adversely effected Rafferty as well.  The pain that Drennen caused Rafferty was the product of conduct in the residential pod that had no valid penological purpose.  Like Sherman, Rafferty can make the objective and subjective showings necessary to establish that Drennen violated her Eighth Amendment rights.  Also, Drennen threatened to retaliate against Rafferty if she reported his sexually based misconduct.  That threat, too, violated Rafferty's Eighth Amendment rights.  In *Chandler v. District of Columbia Department of Corrections*, 145 F.3d 1355 (D.C. Cir. 1998), the district court held that a verbal threat, standing alone, could not support an Eighth Amendment violation claim.  The appellate court explicitly rejected the district court's blanket prohibition.  Whether Drennen's threat to Rafferty violated her constitutional rights depends on an evaluation of the surrounding facts and circumstances.  Unresolved genuine issues of material fact remain as to Rafferty's Eighth Amendment claim against Drennen.

Drennen founds his claim that he is entitled to summary judgment on "bright line" arguments that the Eighth Amendment applies to only when sexual misconduct involves direct physical contact, and only when there is some form of physical injury.  Drennen relies on 42 U.S.C. §1997e(e) to support the purported physical injury aspect of his argument.   That statute applies only to civil actions "brought by a prisoner **confined** in a jail." (Emphasis added) Neither Sherman nor Rafferty was confined in a penal institution when they filed this lawsuit.  Further, an amendment to that statute in 2013 excluded commission of a sexual act from that law's purview. That statute does not require Sherman or Rafferty to demonstrate even *de minimus* physical injury to prevail on their Eighth Amendment claims.

Since 42 U.S.C. §1997e(e) does not apply in this case, the proper point of reference regarding whether a plaintiff must demonstrate physical injury to prevail in a sexual harassment/sexual abuse lawsuit are precedents relating to Eighth Amendment claims generally. Concurring in **Hudson v. McMillian**, *supra p. 4*, Justice Blackmun observed:

> "[I]t is not hard to imagine inflictions of psychological harm—
> without corresponding physical harm—that might prove to be cruel
> and unusual punishment. . . . [T]he Eighth Amendment prohibits the
> unnecessary and wanton infliction of 'pain' rather than 'injury.' . . .
> 'Pain' in its ordinary meaning surely includes a notion of
> psychological harm." 503 U.S. at 16

Viewing the evidence in the light most favorable to them, this Honorable Court should reject Drennen's "bright line" approach, and conclude that Sherman and Rafferty have both present sufficient evidence to create a jury questions of whether they have shown sufficient injury to prevail on an Eighth Amendment claim.

The second premise on which Drennen builds his claim for summary judgment is a blanket rule that, absent physical touching, Sherman and Rafferty cannot prevail on an Eighth Amendment sexual harassment or sexual abuse claim.  Drennen cites a few cases in support of that proposition. None of those citations is to a published opinion.  Although Rule 32.1, Federal Rules of Appellate Procedure, authorizes courts to receive unpublished decision, that rule does not state what degree of authority courts should confer on those rulings.  In **Tanner v. Yukins**, 776 F.3d 434 (6th Cir. 2015), the court of appeals held that unpublished opinions have no precedential value.  By relying exclusively on unreported cases, Drennen has provided this Honorable Court with no authority to support his "bright line" theory of the extent of Eighth Amendment sexual harassment/sexual abuse claims.

One of the unpublished opinions cited by Drennen was written by this Honorable Court. In that ruling, **Valencia v. Rushing**, 4:11CV00048, this Honorable Court expressly recognized that sexual harassment and/or sexual abuse are viable Eighth Amendment claims.  In its Memorandum of Opinion and Order, this Honorable Court engaged in an analysis that mirrors the argument advanced by Sherman and Rafferty at pages 4-6 of this response.  This Honorable Court relied on many of the cases that Sherman and Rafferty have cited at pages 4-6 of this response.  This Honorable Court has adopted the position that whether a prisoner has a valid Eighth Amendment sexual harassment/sexual abuse claim depends on the facts and circumstances of his or her case. A case by case methodology does not lend itself to resolution by summary judgment.  There is enough evidence in the present record to justify allowing a jury to determine from the facts and circumstances of this case whether Drennen violated Sherman's and Rafferty's constitutional rights.

**Drennen is not Entitled to Judgment in his Favor Based on the Claim that Neither**

**Sherman nor Rafferty Exhausted Available Administrative Remedies.**

This Honorable Court must reject Drennen's exhaustion of remedies argument since it has not been timely filed.

> "We emphasize that in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved. ***Pavey v. Conley***, 544 F.3d 739, 742 (7th Cir. 2008)

Drennen, prior to seeking relief based on exhaustion of remedies, engaged in substantial and costly discovery, participated in various conferences relating to the merits of this case with this Honorable Court, and prepared and filed a dispositive motion. If the foregoing analysis by the Seventh Circuit Court of Appeals is to have any efficacy, this Honorable Court should not countenance an exhaustion of remedies at this juncture of this case.

The United States Court of Appeals for the Third Circuit held that ***Pavey*** issued an "admonition" that questions pertaining to exhaustion of remedies "must be decided before merits discovery commences." ***Drippe v. Tobelinsky***, 604 F.3d 778,781 (3rd Cir. 2010) A party's failure to honor the "admonition" that the exhaustion defense must be asserted before proceeding to merits discovery equitably estops that party from asserting that defense. In ***Schultz v. Pugh***, 728 F.3d 619, 622 (7th Cir. 2013), the appellate court acknowledged that equitable estoppel could be used to counter the exhaustion of remedies defense. This case provides a solid basis for concluding that

9

Drennen's delay in asserting (not just pleading) the defense that Sherman and Rafferty failed to exhaust their administrative remedies precludes him from obtaining summary judgment on that defense.

Even if Drennen's request for summary judgment based on exhaustion of remedies was timely, his presentation to this Honorable Court on that issue is superficial and is fatally deficient. Drennen has not presented any evidence that the Jail had a grievance procedure.  Further, to be subject to the exhaustion of remedies requirement, a grievance procedure must be "available" to inmates.  Even if the Jail may have had a grievance procedure, Drennen has not presented any evidence showing that said grievance procedure was "available" to Sherman or Rafferty during their time at the Jail.  Whether a given grievance procedure is "available" to an inmate depends on whether that grievance procedure is "capable of use for accomplishment of a purpose." *Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007) A grievance procedure that exists on paper, but, in reality, cannot provide the inmate any meaningful relief is not "available" to him or her.  Based on the evidence offered by Drennen, this Honorable Court cannot determine if the Jail maintained a grievance system capable of providing Sherman and/or Rafferty meaningful relief.

At best, the Jail offered the inmates the right to present complaints through kites.  There is nothing in the record that shows that the Jail had any obligation to take any remedial action in response to inmate kites.

> "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint leaving the inmate with nothing to exhaust." *Abney v. McGinnis*, 380 F.3d 663, 667 (2nd Cir. 2004)

Based on this record, this Honorable Court cannot definitively find that there was anything for Sherman and/or Rafferty to exhaust. Sherman's deposition testimony was that a corrections officer denied the opportunity to submit kites relating to Drennen's sexually abuse and harassment. (Sherman dep. p. 29). The conduct of Jail officials rendered any administrative remedies that might have existed to not be "available" to Sherman.

Rafferty confirmed that there was no system of administrative remedies "available" to inmates of the Jail. Rafferty stated that the kite system in place at the Jail was neither "safe" nor "secure" (Rafferty dep. p. 122). Rafferty's exact testimony about any potential administrative remedies that may have been provided to inmates at the Jail was:

> "At no point when I was in Trumbull County Jail was I given a handbook, was I educated to the point of if something like this were to happen, this is how you can safely report it, this is who you can safely report it to, and this is what you can expect to happen after you report it. None of that was made available." (Rafferty dep. p. 121)

Viewed in the light most favorable to Sherman and Rafferty, the evidence in the record supports a finding that the Jail did not provide any meaningful administrative remedies.

### Drennen is not Entitled to Qualified Immunity.

Two United States Supreme Court decisions govern how courts should proceed when deciding whether persons sued pursuant to 42 U.S.C. §1983 are entitled to qualified immunity. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court articulated a multi-part test. *Saucier* held that qualified immunity from suit attached unless the plaintiff (1) could establish a

constitutional violation, (2) demonstrate that the constitutional right alleged to have been violated was clearly established, and (3) show that the violator knew or should have known that his or her conduct was unconstitutional. See also *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010)  *Saucier* required courts to consider the qualified immunity factors in a set order.  In *Pearson v. Callaghan*, 555 U.S. 223 (2009), the Supreme Court reiterated the *Saucier* factors, but held that the order in which a court considered those factors was not inflexible.  Notwithstanding the order in which this Honorable Court applies the qualified immunity factors here, Drennen is not entitled to that benefit.

First, Sherman and Rafferty have presented sufficient evidence to satisfy all of the elements of an Eighth Amendment violation.  Like the rules pertaining to summary judgment motions, the principles of qualified immunity require courts to consider the evidence in the record in the light most favorable to the plaintiffs.  *Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003) Next, the constitutional premise that prison official cannot sexually harass or sexually abuse inmates is clearly established.  See *Schwenk v. Hartford*, *supra. p. 5*  The Sixth Circuit Court of Appeals has held that general statements of the law can "clearly establish" constitutional rights for qualified immunity purposes.  The critical factor in the analysis is whether the pre-existing case law gives the defendant "fair warning" that his or her conduct is not lawful.  *Kennedy v. City of Cincinnati*, 595 F.3d 327 (6th Cir. 2010)

From the United States Supreme Court's ruling in *Hudson v. McMillian*, *supra p. 4*, forward, the law has recognized a relationship between sexual harassment and sexual abuse of inmates and the Eighth Amendment.  Any properly trained corrections officer knows that there is a line regarding sexual interaction with inmates that cannot be crossed.  The "clearly established" law in early 2014 gave Drennen "fair warning" that soliciting Sherman to bare her breasts for him

12

and masturbate for him, making sexually comments to Sherman, and threatening to retaliate against Rafferty were all unlawful actions. Drennen cannot avoid liability for his misconduct by arguing that the constitutional rights that Sherman and Rafferty assert were not "clearly established."

Third, a corrections officer like Drennen who engages in clearly inappropriate sexual conduct with an inmate knows or should have known that his or her conduct wantonly inflicts pain, and is contrary to the Eighth Amendment. Qualified immunity only operates to protect government officials:

> ". . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982)

Drennen's sexual harassment and sexual abuse of Sherman and Rafferty does not merit qualified immunity protection.

Drennen does not separately address his potential qualified immunity from Sherman's and Rafferty's Eighth Amendment claims. At pages 12-14 of his supporting memorandum, Drennen discusses the merits of Sherman's and Rafferty's Eighth Amendment claims. Erroneously concluding that Sherman and Rafferty cannot prevail on the merits of those Eighth Amendment claims, Drennen erroneously concludes that he is entitled to qualified immunity. Sherman and Rafferty have rebutted Drennen's contention that he is entitled to summary judgment as to the merits of Sherman's and Rafferty's constitutional claims, *supra. p. 4-8* By virtue of the logic of Drennen's approach to qualified immunity, Sherman and Rafferty have, therefore, also rebutted

Drennen's assertion of qualified immunity.  Of course, Sherman and Rafferty have also shown that even had Drennen presented qualified immunity as a separate and distinct argument, he could not prevail.

## Conclusion.

For all of the reasons set forth above, Drennen has not shown that he is entitled to summary judgment against either Sherman or Rafferty.  Drennen is not entitled to qualified immunity and there are unresolved questions of fact as to the claims for relief asserted by both Sherman and Rafferty.  It is for a jury to decide those questions of fact and determine who is entitled to judgment as a matter of law.  This Honorable Court must overrule Drennen's Motion for Summary Judgment in its entirety.

Respectfully submitted,

/s/ *Sarah Thomas Kovoor*
Sarah Thomas Kovoor (0069223)
Thomas D. Lambros (0049206)
FORD, GOLD, KOVOOR & SIMON, Ltd.
8872 East Market Street
Warren, OH  44484
P: (330) 856-6888 / F: (330) 856-7550
E: sarah.thomas.kovoor@gmail.com
tdlambros@gmail.com
*Counsel for Plaintiffs*

14

## CERTIFICATE OF SERVICE

The foregoing Memorandum in Response to Motion of Defendant Charles Drennen for Summary Judgment was filed electronically through the ECF system on the 31st day of July 2017. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system

/s/ *Sarah Thomas Kovoor*
Sarah Thomas Kovoor
FORD, GOLD, KOVOOR & SIMON, Ltd.
*Counsel for Plaintiffs*