PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHELE L. RAFFERTY, *et al.*, | ) |
| Plaintiffs, | ) CASE NO. 4:16CV430 |
| v. | ) JUDGE BENITA Y. PEARSON |
| TRUMBULL COUNTY, OHIO, *et al.*, | ) |
| Defendants. | ) **ORDER** [RESOLVING ECF NOs. 99, 103, 112, 113, & 115] |

Pending before the Court are two motions for summary judgment: (1) a motion from Defendant Charles Drennen (ECF No. 103), and (2) a motion from Defendants Trumbull County, Sheriff Thomas Altiere, and Lieutenant Eric Shay (ECF No. 99). Plaintiffs Michele Rafferty and Katie Sherman have responded. ECF Nos. 105 & 108. Defendants have filed replies. ECF Nos. 110 & 111. For the reasons that follow, the Court grants in part and denies in part Defendant Drennen's Motion for Summary Judgment and grants the Trumbull County Defendants' Motion for Summary Judgment on Plaintiffs' Amended Complaint.

## I. Background

### A. Allegations of Sexual Abuse

Plaintiffs, Michele Rafferty and Katie Sherman, are two former inmates at the Trumbull County Jail. For a time, Plaintiffs resided in the same pod in the jail, and they allege that Defendant Charles Drennen, a corrections officer during their time at the Trumbull County Jail,

(4:16CV430)

"engaged in a pattern of sexual misconduct with female inmates." ECF No. 42 at PageID #: 225. While the amended complaint contains allegations that Drennen conducted inappropriate strip searches of Plaintiffs and would himself engage in masturbation (*id.*), the deposition testimony of Plaintiffs does not go so far. Instead, both Rafferty and Sherman testified that they never witnessed Drennen masturbate. ECF No. 102 at PageID #: 736 & ECF No. 101 at PageID #: 648. Additionally, both testified that Drennen never touched them inappropriately. ECF No. 102 at PageID #: 707 & ECF No. 101 at PageID #: 649. Rather, they both testified that while they were in their pod and Drennen was performing rounds during the midnight shift, Sherman exposed her breasts on three or four occasions and removed her shorts and masturbated while covered by a blanket on one or two occasions. ECF No. 101 at PageID #: 611 & ECF No. 102 at PageID #: 705. Sherman testified that she engaged in these actions because Drennen asked her to do so. ECF No. 102 at PageID#: 705. Sherman also testified that while Drennen never threatened her, she never refused to remove her clothing because she found Drennen intimidating. *Id.* at PageID #: 716. Rafferty testified that while she never heard Drennen threaten Sherman, causing her to expose herself under threat of discipline, she heard Drennen ask Sherman to expose herself or write him notes that would contain flirtatious and sexual content. ECF No. 101 at PageID #: 652.

Additionally, Rafferty testified that nobody ever ordered her to watch Sherman expose herself, but the two had bunks right next to each other, so there "wasn't any way not to be a part of what was going on." *Id.* Drennen, on the other hand, testified that Sherman exposed her breasts to him on one occasion, but he chose not to report it, because of the potential for it to put

2

(4:16CV430)

him in "a bad light" and jeopardize his chances of receiving an assignment to work outside the jail 'on the road.' ECF No. 104-1 at PageID #: 777. Drennen also testified that he was aware that Sherman "liked [him], but [he] never, never gave that back." Id. at 782.

### B. Rafferty's Confrontation with Drennen

Rafferty testified that, after Sherman was released from Trumbull County Jail, she and another inmate, Tania Cordwell, confronted Drennen about his behavior with Sherman and requested that he not engage in such behavior with other young girls that came into the jail. ECF No. 101 at 659-60. Rafferty testified that more inmates in her pod had intended to confront Drennen with her but, on the night they planned to do so, all other inmates besides Cordwell had already fallen asleep by the time Drennen had made his way to their pod. Id. Rafferty testified that, upon confronting Drennen, Drennen threatened her, demanding that she drop the issue or else he would make the rest of her stay uncomfortable, because he had already faced investigation for similar issues in the past. Id. at 595-96. Rafferty testified that she took Drennen's response as a direct threat and that she had concerns about reporting the issue. Id.

Drennen decided to report Raffety's actions. ECF No. 104-1 at PageID #: 780. Drennen testified that Rafferty and another inmate–he thought it was an inmate named "Smerdell"–blackmailed him, threatening to expose a purported relationship between Drennen and Sherman unless he gave them cigarettes, a lighter, and razors. Id. Drennen also testified that he reported this incident to the acting assistant warden after consulting with two co-workers. Id. at 781.

3

(4:16CV430)

### C. Internal Investigation

After learning of the incident, Trumbull County conducted an investigation led by Major Stewart. *Id.* at PageID #: 783. The investigation included an interview of Drennen, and Drennen later testified that he told two lies during that interview: (1) he concealed that he and his wife were having marital problems related to financial issues and (2) he denied that Sherman had exposed her breasts to him. *Id.* Drennen was asked to take a polygraph test after the interview, but resigned before the polygraph was administered. *Id.*

Major Stewart also interviewed Sherman. ECF No. 102 at PageID #: 721-22. Sherman testified that, during that interview, she lied to Major Stewart when she denied the allegations regarding exposing herself to Drennen at Drennen's request. *Id.* at PageID #: 723-24. Sherman testified that she lied because she did not want to relive the experience and it was awkward to have the discussion with a man her father's age. *Id.* at PageID #: 724-25.

When deposed, Rafferty testified that, when Defendant Eric Shay interviewed her as part of the investigation, she reported Drennen's threat to her as well as Defendant's Drennen's "inappropriate ways". ECF No. 101 at PageID #: 661-63. Rafferty also testified that the Trumbull County Jail had a kite system in place to report complaints. ECF No. 101 at PageID #: 531. Kites were three sheet-forms, and once an inmate completed the form, all three sheets would go to the administration, but the inmate would eventually get a copy. *Id.* Rafferty testified that she never used a kite to complain about Drennen, because she was afraid of two possible outcomes: (1) that the officer from whom she requested the form would refuse to give her one or (2) that requesting the kite would create backlash. *Id.* at 532-33. Rafferty further

(4:16CV430)

testified that officers would sometimes deny inmates a kite because the officer did not want to be linked to the complaint, as the officer's name would appear on the form. *Id.* at 533.

Sherman similarly testified that she never filed a complaint against Drennen, though she did ask Officer Nobbs for a kite form. ECF No. 102 at PageID #: 700. Sherman also testified that Officer Nobbs told her that she would speak with Sherman about the kite form, but never did so, so Sherman dropped the issue. *Id.*

Rafferty testified that after Drennen reported the purported blackmail, she was denied toiletries, cleaning products, and feminine products from time-to-time. ECF No. 101 at PageID #: 601-02. She testified that she tried to report these incidents, but none of the corrections officers from whom she requested a kite gave her one, though she could not recall the names of which officers she asked or the exact number of officers from whom she requested a kite. *Id.* at PageID #: 601-602.

Plaintiffs have brought a 42 U.S.C. § 1983 action, alleging Eighth and Fourth Amendment violations by Defendant Drennen, a *Monell* claim against the Trumbull County Defendants, and various state law claims against the Trumbull County Defendants.

## II. STANDARD OF REVIEW

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the

5

(4:16CV430)

burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

(4:16CV430)

## III. DISCUSSION

**A. Defendant Drennen's Motion for Summary Judgment**

In cases brought against public officials in their individual capacity, the general rule is that "government officials performing discretionary functions are generally shielded from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis has two prongs: (1) whether the facts that a plaintiff has alleged or shown constitute a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Clearly established means that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "the salient question. . . is whether the state of the law. . . gave . . . fair warning that [the] alleged treatment . . . was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Once a state official "raise[s] a qualified immunity defense, 'it is the plaintiff's burden to prove that the state officials are not entitled to qualified immunity.'" *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006)).

Plaintiffs have alleged violations of rights protected by the Fourth and Eighth Amendments. The Court begins by addressing Drennen's administrative exhaustion argument.

(4:16CV430)

**1. Exhaustion**

As a preliminary matter, Defendant Drennen's argument that Plaintiffs did not exhaust their administrative remedies (ECF No. 103 at PageID #: 756) fails, because the exhaustion requirement does not apply. Section § 1997e(a) of Title 42 provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by *a prisoner confined in any jail*, prison, or other correctional facility until such administrative remedies as are available are exhausted." (emphasis added). Plaintiffs, however, did not initiate this lawsuit until after their release from prison. *Cf. Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003) (holding that plaintiff brought case when he was a prisoner even though the court was deciding motion after prisoner's release, because plaintiff was a prisoner when he filed the lawsuit, and therefore, the exhaustion requirement applied); *see also Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998) ("Congress therefore fully intended to distinguish between those who are 'prisoners' when they decide whether to file a complaint and those who are not."). Therefore, Plaintiffs had no obligation to exhaust administrative remedies.

**2. Eighth Amendment**

To violate the Eighth Amendment, claims of sexual abuse or harassment must meet a two-part standard: (1) an objective component that focuses on the severity of the conduct and (2) a subjective component that focuses on the actor's intent. *Sautter v. Halt*, 12-CV-2399, 2015 WL 1915251, at *8 (N.D.Ohio April 25, 2015) (Pearson, J.). To satisfy the objective component, a plaintiff must show that the violation was "an extreme deprivation," beyond the routine discomfort prisoners normally face. *Id.* Additionally, a plaintiff must show that the prison

8

(4:16CV430)

official in question "knew of, and acted in deliberate indifference to, an inmate's health or safety." *Id.* (citation omitted).

The Court will analyze Sherman and Rafferty's Eighth Amendment claims individually.

### a. Plaintiff Sherman

#### i. Violation of a Constitutional Right

Sherman claims that Drennen violated her Eighth Amendment rights when he forced her to expose her breasts to him on three or four occasions and masturbate for his viewing on one or two occasions. Drennen argues that these actions constitute sexual harassment, and that sexual harassment without any touching does not violate the Eighth Amendment. ECF No. 103 at PageID #: 756-58.

Defendant is correct insofar as the Court previously held that "sexual harassment, absent contact or touching, does not satisfy the objective requirement." *Sauter*, 2015 WL 1915251 at *8. That does not control in this case, however, as this case included touching. Drennan intimidated Sherman into touching herself in compliance with his requests. That Drennan did not touch her himself is of no moment, because Sherman testified that she only revealed her breasts and masturbated at Drennen's request. A request she, an inmate, felt she could not refuse.

Previously, the Sixth Circuit held that an inmate that engaged in a consensual sexual relationship with a prison official could not state an Eighth Amendment claim because the relationship was consensual. *Hall v. Beavin*, 202 F.3d 268 (table) (6th Cir. Nov. 8, 1999). Sherman, however, does not concede that she freely consented to her actions. Instead, she

9

(4:16CV430)

testified that, although Drennen never explicitly threatened her, she only complied with his requests because she felt intimidated by him. ECF No. 102 at PageID #: 716. The fact that Drennen did not explicitly threaten Sherman does not necessarily mean that Sherman freely gave consent, because of the power dynamics in prisons. *See* Wood v. Beauclair, 692 F.3d 1041, 1047 (9th Cir. 2012) ("The power dynamics between prisoners and guards make it difficult to discern consent from coercion."); *see also* Chao v. Ballista, 772 F.Supp.2d 337 (D.Mass. 2011) ("A guard is a female inmate's captor ... the men in these circumstances have *absolute* power over women. Should she wish to end the relationship–and the termination of coercive relationships is often fraught even in the outside world–she cannot simply "leave." ") (emphasis in original).

Though Drennen argues that this case is similar to Valencia v. Rushing, 11-CV-48, 2011 WL 2621671 (N.D.Ohio Jul. 5, 2011) (Pearson, J.), in which the Court held that the alleged conduct was isolated or relatively minor, this argument does not persuade. In *Valencia*, the plaintiff indicated that he considered two of the three incidents of the officer touching his buttocks "excusable." Id. at *3. There is no similar admission in this case. Accordingly, the foregoing satisfies the objective prong of the Eighth Amendment analysis.

As to the subjective prong, a sufficiently culpable state of mind is all that is required. Sauter, 2015 WL at 1915251, at *8 (citation omitted). A sufficiently culpable state of mind is one that is deliberately indifferent to an inmate's health or safety. Id. (citation omitted). The Eighth Amendment protects human dignity, and therefore, outlaws conduct that lacks any penological justification. Wood, 692 F.3d at 1050 (citing Gregg v. Georgia, 428 U.S. 153, 182-83 (1976)). An officer's requests that a female inmate perform tasks for his enjoyment that

(4:16CV430)

include exposing her breasts and masturbating achieve no penological justification, but rather, are demands that the inmate shed her human dignity to acquiesce to the officer's desires. Because of this, Drennen's conduct satisfies the objective standard.[1]

Finally, Drennen argues that Sherman has not suffered an injury due to his alleged conduct, as no doctor has made such a diagnosis and all mental ailments Sherman has pre-existed her time in the Trumbull County Jail. ECF No. 103 at PageID #: 757. During her deposition, however, Sherman testified that posttraumatic stress disorder that she developed as a child has worsened since her time in prison, manifesting in an increase in night terrors from about once a month at the time she entered Trumbull County Jail to two or three times a week since her release from the jail. ECF No. 102 at PageID #: 729-734. As the District of Massachusetts has recognized, a relationship with a guard may result in retraumatiziation or post-traumatic stress disorder. *Chao*, 772 F.Supp.2d at 351. (citation omitted). While facts in the record related to the injury Sherman purportedly suffered are sparse, they are not nonexistent. Therefore, Sherman satisfies the injury requirement.[2]

---

[1] Though Sherman's exposure of her breasts may not have been enough to survive summary judgment alone, those actions are relevant as they go to the overall sexual abuse that she suffered due to Drennen's control over her, and therefore, remain part of her Eighth Amendment claim.

[2] Drennen argues that the injury requirement comes from 42 U.S.C. § 1997e(e), which states that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in Section 2246 of Title 18)." However, much like the administrative exhaustion provision, 42 U.S.C. § 1997e(a), this provision does not apply. Plaintiffs did not bring

(continued...)

(4:16CV430)

### ii. Clearly established law

In determining whether a right is clearly established, courts must ask if "[T]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Drennan contends that no clearly established law exists to substantiate an Eighth Amendment violation. ECF No. 110 at PageID #: 866. That is not so. It is clearly established that sexual abuse is impermissible. *See Schwnek v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("[T]he Eighth Amendment right of prisoners to be free from sexual abuse [is] unquestionably clearly established.").³ In fact, one of the cases upon which Drennen relies, *Sautter*, holds that "[s]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Sautter*, 2015 WL 1915251, at *8 (internal quotation omitted). Although Drennen may quibble

---

²(...continued)
this action when they were prisoners confined in a jail. Thus, the plain language of § 1997e(e) precludes its application in the present case.

³ Drennen attempts to differentiate *Schwenk* on the grounds that "nothing alleged by Plaintiffs or found in the record even resembles the atrocities that took place in *Schwenk*," because "Mr. Drennen's only wrongdoing was his failure to report Plaintiff Sherman's misbehavior." ECF No. 110 at PageID #: 864. This argument fails for two reasons. First, although there are factual differences between *Schwenk* and this case, *Schwenk* still holds that it is clearly established law that sexual abuse violates an inmate's Eighth Amendment rights. *Schwenk*, 204 F.3d at 1197. Second, Sherman and Rafferty's testimony, which Drennen ignores in his explanation of why *Schwenk* is different, creates a material issue of fact as to the acts that Sherman performed. Viewing Sherman's testimony in the light most favorable, Drennen's request that Sherman expose herself and masturbate for his gratification constitute sexual abuse.

(4:16CV430)

over the characterization of his conduct as sexual abuse, the facts, viewed in a light most favorable to Plaintiffs, demonstrate that Sherman only masturbated and revealed her breasts due to Drennen's control over her. Any reasonable prison official would understand that he has no authority to command an inmate to engage in sexual acts.

### b. Plaintiff Rafferty

Unlike with Sherman, there are no allegations of a sexual nature involving Rafferty. She admits that she never engaged in any sexual conduct at Drennen's request. Instead, her allegations are two-fold: (1) that she was forced to watch Sherman masturbate and expose herself and (2) that Drennen threatened her when she confronted him about his conduct.

As to Rafferty's first theory, she cannot recover, as she lacks standing. Rafferty essentially argues that she suffered an injury based on Drennen's actions toward Sherman, but an inmate does not have standing to assert a claim based on the violation of another's rights. *See* *Holder v. Cuyahoga County Jail*, No. 16-CV-2718, 2017 WL 696691, at *2 (N.D.Ohio Feb. 21, 2017) (Nugent, J.) (holding that plaintiff's allegations regarding general conditions in parts of a prison without a claim that those conditions personally impacted him failed to establish standing) (citing *Shepard v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003)). While Rafferty contends that Drennen's actions toward Sherman have caused her injury, the Eighth Amendment affords her no right of protection against that, especially when Rafferty has admitted that she was not forced to watch these interactions. *See* ECF No. 101 at PageID #: 652.

Rafferty's second theory of recovery also fails. As a general rule, verbal threats are not a violation of the Eighth Amendment. *Miller v. Wertanen*, 109 F.App'x. 64 (6th Cir. 2004)

13

(4:16CV430)

(holding that verbal threat, among other actions, was not a violation of inmate's constitutional rights); *see also*, *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor dot not constitute a § 1983 claim.") (citation omitted).

### 3. Fourth Amendment

Drennen's argument that Plaintiffs have not established a Fourth Amendment violation is well-taken. As Drennen points out, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), holds that inmates do not have a Fourth Amendment expectation of privacy in their cell.

Additionally, Plaintiffs did not address the Fourth Amendment in their memorandum in opposition to Drennen's motion. Thus, Plaintiffs have abandoned that claim. *See Hicks v. Concorde Career Coll.*, 449 F.App'x. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *see also, e.g.*, *Hadi v. State Farm Ins. Cos.*, 2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding plaintiff's failure to respond with any evidence supporting his negligent infliction of emotional distress claim "apparently concedes that summary judgment is proper on this count.")

### B. Trumbull County's Motion for Summary Judgment

#### 1. Municipal Liability

Trumbull County argues that municipal liability is improper. First, it argues that there is no underlying constitutional violation; however, that argument fails as to Defendant Sherman, as detailed above. That said, the argument succeeds as to Plaintiff Sherman, as detailed above. Second, Trumbull County argues that Plaintiffs have failed to show that there was a Trumbull

14

(4:16CV430)

County custom or policy that caused the violation. Trumbull County's second argument is well-taken as to both Plaintiffs.

To sustain a municipal liability claim under Section 1983, a plaintiff must show two things: (1) the occurrence of a constitutional violation, and (2) that a custom or policy caused the violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). The Court has already addressed the first issue, holding that Sherman's Eighth Amendment claim survives, though Rafferty's fails. Therefore, the following analysis focuses entirely on whether Sherman has met the second prong of the *Spears* test.

In Plaintiffs' response to Trumbull County's motion for summary judgment, Plaintiffs rely on *Spears*, for the proposition that there are at least four theories under which a plaintiff can prove the existence of an illegal custom or policy, including a custom of tolerance and acquiescence. ECF No. 108 at PageID #: 853. Immediately following, Plaintiffs argue that "[v]iewed indulgently to Rafferty and Sherman, Drennen's statement can be reasonably construed as evidence that Trumbull tolerated and acquiesced in Drennen's sexual misconduct toward female inmates." *Id.* That this is Plaintiffs' argument on the issue reveals that they are proceeding under a custom of tolerance theory.

To succeed on a custom of tolerance theory, Plaintiffs must put forward evidence that shows that Trumbull County's need to act was so obvious that the decision not to act amounted to a policy of deliberate indifference to Plaintiffs' constitutional rights. *See Stanfield v. City of Lima*, 244 F.Supp.3d 638, 655-56 (N.D.Ohio 2017) (Lioi, J.) (appeal pending) (citing *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996)). Additionally, Plaintiffs must show "that

15

(4:16CV430)

there was a pattern of inadequately investigating similar claims." *Id.* (citing *Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir. 2013)*).

The only piece of evidence Plaintiffs offer to support their theory is Rafferty's testimony that Drennen told her "he had previously already been looked into a number of times for improper behavior with female inmates and nothing had come of it." ECF No. 101 at PageID #: 596. Drennen, however, denied making such a statement, and he testified that no inmates had ever filed complaints against him, nor had internal affairs ever questioned him prior to Major Stewart's investigation regarding Rafferty's allegations. ECF No. 104-1 at PageID #: 785. Likewise, in its responses to Plaintiffs' interrogatories, Trumbull County averred that the only investigation Drennen faced as a corrections officer was the investigation that resulted from Rafferty's allegations. ECF No. 99-2 at PageID #: 508-10. Plaintiffs, therefore, have not shown a pattern of inadequately investigating claims related to Drennen. Moreover, Plaintiffs have not offered evidence to support the conclusion that Trumbull County has a policy of overlooking sexual harassment or abuse generally. In the four other complaints against male corrections officers alleging improper conduct toward female inmates since January 2007, Trumbull County imposed discipline or the officer resigned his position. *Id.* at PageID #: 509-511.[4]

---

[4] These four incidents involved three different individuals. The first incident, allegations that an officer was watching female inmates shower, led to a fifteen-day suspension and last chance agreement. The officer subsequently violated the last chance agreement, and as a result, Trumbull County fired him. The second incident, an allegation that a corrections officer obtained an inmate's phone number and sent text messages to the inmate, led to a termination that was reversed on arbitration. This same officer, however, was the perpetrator in the third incident, a complaint that, after an

(continued...)

(4:16CV430)

### 2. Remaining Theories of Liability

In Trumbull County's motion, it references other remedial theories besides Section 1983 that it believes Plaintiffs alleged in their amended complaint, including claims under Ohio state law, such as negligent hiring and negligent infliction of emotional distress. Plaintiffs do not address any of these arguments in their memorandum in opposition; therefore, they have abandoned these claims. *See Hicks*, 449 F.App'x. at 487; *Hadi*, 2008 WL 4877766, at *13.

### IV. SUMMARY

Based on the foregoing, Defendant Drennen's motion is granted in part and denied in part. It is granted for all claims, except for Plaintiff Sherman's Eighth Amendment claim. The Trumbull County Defendants' motion is granted. The Court will issue a separate judgment entry.

The only remaining claim in this case is Plaintiff Sherman's 42 U.S.C. § 1983 claim against Defendant Drennen based on a violation of Plaintiff Sherman's Eighth Amendment rights.

During the pendency of this motion, Defendants have filed various motions related to the final pretrial conference and trial. First, Defendants have filed a Motion to Continue Trial and Final Pretrial Conference. ECF No. 112. It is denied as to Defendant Drennen, and denied as moot as to the Trumbull County Defendants. Second, Defendant Drennen has filed a Motion to

---

⁴(...continued)
inmate's release, the officer used heroin with the former inmate and raped her. The officer resigned. Finally, Trumbull County terminated a corrections officer who received oral sex from an inmate, and the officer faced criminal prosecution, pleading guilty to obstructing official business and public indecency. ECF No. 99-2 at PageID#: 509-11.

(4:16CV430)

Excuse Personal Appearance at Final Pretrial Conference. ECF No. 113. That motion is denied. Finally, the Trumbull County Defendants have filed a Motion to Excuse Personal Attendance of Claims Representative at Final Pre-Trial Conference. ECF No. 115. The motion is denied as moot.

    The pre-trial conference and trial will occur on the dates previously scheduled.

    IT IS SO ORDERED.

| | |
|---|---|
| November 20, 2017 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |